## MEETING STREET BAPTIST SOCIETY *v.* GEORGE HAIL.

Though a deed be inartificially drawn, yet if its purposes are clearly expressed, and are of a kind proper to be carried into effect, it may be a good conveyance to charitable uses, under the ruling of this court, in *Potter* v. *Thornton,* 7 R. I. 252; and if unambiguous in its terms, no practice under it can materially modify its construction, or destroy the trust which it directs.

That the grantees or "feoffees in trust," named in a conveyance to charitable uses, have deceased, is an immaterial fact; for if the uses prescribed are such as require a fee to support them, the grant of a fee will be implied, and equity will not suffer the trust to fail for want of a proper trustee.

BILL IN EQUITY for the specific performance of a contract for an exchange of lands.

It appeared from the pleadings, the case being tried upon bill and answer, that the complainant—a religious corporation of colored people—had agreed to convey to the respondent a certain lot of land, long occupied by the complainant as the site of a house of worship, the respondent, in consideration thereof, agreeing to convey to the complainant a certain other lot, whereon the complainant proposed erecting a new church edifice; and, also, it appeared that the only obstacle to a consummation of the contract was the respondent's dissatisfaction with the title proffered by the complainant. The foundation of this title was a deed from one Moses Brown, bearing date the 17th day of fourth month, 1819, which was appended to the bill. The important portions of it are these :—

"I give, grant and convey [the lot] unto my son, Obadiah Brown, my friends, George Benson and Henry Jackson, as feoffees in trust, for the purpose and use of erecting thereon a suitable building for a school house on the Lancaster plan of education, and also for a meeting house for divine worship, for the people of color that now are, or hereafter may be, in this town, and for no other use but for the said people of color forever." * * * "And it is to be understood as my desire " * * * " in case, as it must sooner or later happen, that the

feoffees in trust, herein named, or any two of them, be removed, that, in that case, the town council for the town of Providence, for the time being, be, and I hereby constitute them, as feoffees in trust, to superintend, advise and counsel the colored people in the best and most needful manner for the furtherance of the objects of the said estate." * * * "Although this, I am sensible, is not a formal deed of gift, yet it is my intention to vest in my feoffees in trust, and after them, as aforesaid, the town council for the time being, forever feoffees in trust, with the premises herein given, and granted for the purpose aforesaid, as fully as if drawn in a more formal manner. Hereby conveying all my right, title and interest, which I or my heirs may, have, could, or might hold in the said lot of land, to be applied to and for the use of the people of color forever for a school house and meeting house for them and their descendants and associates forever. Hereby warranting the same from the claim of all persons claiming the same from, by or under me."

It also appeared from the pleadings, that all of the original feoffees in trust had deceased prior to instituting this suit ; and in the answer were succinctly set forth other facts, as follows :—

"And this defendant further answering, says, that he is informed, and believes it to be true, that after the making of said deed, namely, in the month of April, 1819, such of the colored people of Providence as were minded to accept the benefits of said deed, assembled together on the lot of land therein mentioned, and commenced the erection of a building thereon, fifty feet long, forty feet wide and thirty feet high, for a school house in the basement, and meeting house above, and who, by their own labor, and with their own proper monies in part, and in part by donations by them solicited and obtained from white people, by the month of June, 1821, had erected and completed the exterior of said building, and commenced a free school therein for people of color in Providence ; that having no means for completing the interior of said building suitable for a place of worship, and being few in number, and in poor circumstances, they contracted for the sale of pews in the said meeting

house when completed, and were thereby enabled to complete the interior of said building, which being completed they caused to be dedicated as a place of public Christian worship, on the 31st day of August, 1821 ; that on the 1st day of September, 1821, there being forty-eight pews on the floor of said meeting house, one was reserved for the minister and schoolmaster, one for "strangers or gentlemen and ladies of the town," and "eight for free seats, if funds could be raised sufficient to defray the expenses of the house without their sale," and the rest were sold or offered for sale to the highest bidder ; that the purchasers of said pews received a certificate of their purchase thereof from a committee, appointed by those who built said meeting house, known as the "Committee of the African Union Meeting and School House," it being provided in said certificate that the holders of said pews should sell them only to people of color ; that the purchasers of said pews, at said original sale thereof, were of those for the most part by whom said meeting and school house had been built, and such purchasers, their heirs, or assigns, or their legal representatives, have had peaceable and uninterrupted · possession and control of said meeting and school house, from said 1st September, 1821, to the present time, under the superintendence, counsel and advice of said trustees, so long as there were two of them living, and from the 11th day of December, 1836, at their own will, no person or persons objecting thereto or attempting to disturb them therein ; that the said Obadiah Brown departed this life October 15th, 1822, and the said George Benson, December 11th, 1836, and by the incorporation of the City of Providence, in the year 1832, the town council of the town of Providence was abolished and ceased to exist, more than four years before the event appointed in said deed for that body to succeed to said trust ; that no school on the Lancaster plan has ever been maintained or attempted in said meeting and school house, and since about 1840, no secular school of any kind has been maintained therein ; that said original pewholders, their heirs or assigns, and legal representatives, have regularly maintained Christian worship in said meeting house, from said time of its dedication until now,

by their own voluntary contributions and collections, and by assessments upon, and the leasing of, the said pews,—from 1821 to 1855, as a voluntary association, and since 1855, as an incorporated society; that the plaintiff, since its incorporation, has obtained from the heirs at law of said Moses Brown a quit claim of all their interest in the said premises, in the said deed from Moses Brown mentioned."

The only ground of defence taken in the answer was, that the defendant was advised that the complainant cannot make him a good title to the premises agreed to be conveyed, because the deed from Moses Brown created a trust in favor of persons of color, to which the premises would remain subject, in his hands.

*Currey, for complainant:*—

Although the deed from Mr. Brown may sound like a deed of trust, yet, taking its language in connection with the relative position and general purpose of the parties (*Deblois v. Earle*, 7 R. I. 26), and their acts under it for nearly half a century, it will be evident that the deed was intended to operate, not as a trust, but as an absolute gift to the parties who took possession of the land on the making of the deed, and whose title, as is shown by the answer, the complainant now has. The deed itself is so extraordinary an instrument that, taking its language alone, it is difficult to put any satisfactory construction upon it, according to the rules of law. It might, without any impropriety, be held to be totally void for uncertainty, in which case the complainant would be competent to make a good conveyance to the respondent, by virtue of the deed obtained by the complainant from the heirs of Moses Brown, mentioned in respondent's answer. Story's Eq. Jur. § 1183. The direct and palpable object of the parties was, to convey to Obadiah Brown, George Benson and Henry Jackson a lot of land for the erection of a building to be used as a school and meeting house for the colored people of Providence; but how this was to be accomplished according to the rules of law, how and in whom the legal title was to be placed, and how it was intended that the title should be continued and perpetuated, it is extremely difficult to ascertain or even conjecture, from the terms and provisions of this deed.

I. This deed contains no words of procreation in the grant to the so-called "feoffees in trust." In a grant or feoffment at common law, or operating under the statute of uses, this of course would limit the grant to an estate for life. 2 Washburn on Real Prop. 116, § 13. But in the case of a conveyance to a trustee, without words of inheritance, the general doctrine in the United States seems to be, that a fee will be implied whenever the purposes of the trust make it necessary, or cannot be properly accomplished without such a construction. *Fisher* v. *Fields,* 10 Johns. 505; *Welch* v. *Allen,* 21 Wend. 147; *Stearns* v. *Palmer,* 10 Met. 32; *Gould* v. *Lamb,* 11 Ib. 84; *Cleveland* v. *Hallett,* 6 Cush. 403; *North* v. *Philbrook,* 34 Me. 537; *Rutlege* v. *Smith,* 1 Busbee Eq. 283; *Neilson* v. *Lagon,* 12 How. U. S. 110; *Williams* v. *First Presbyterian Society,* 1 Ohio St. N. S. 493, *semble.* Although in England there appears to be still no departure from the ancient doctrine of conveyancing on this subject, *Doed Pettow* v. *Fricker,* 6 Excheq. 510; and in this State the English rule is acted upon *in practice.* Upon the weight of authority, however, the omission of words of inheritance in this case is of no importance, if the deed can be said to create a trust. And it is very remarkable, that while the manifest object was the erection of "a suitable building for a school house on the Lancaster plan of education, and also for a meeting house for divine worship for the people of color," and while the immediate grantees are called "feoffees in trust," for that purpose, the deed does not make it the duty of such feoffees to erect the building, or place any fund at their disposal, either for that purpose or for the maintenance of the peculiar mode of education pointed out, or for the support of the ministry to be connected with the church; nor are any active powers or duties vested in, or imposed upon, said feoffees, touching the management or disposition of the property, save what is found in the closing part of the deed, namely, the obligation to apply the property "to and for the use of the people of color forever, for a school house and meeting house for them and their descendants and associates forever." Can it be said that this creates a trust in the general

sense of the term ? Clearly the intention to create a trust must be purely a matter of conjecture.

II. The deed does not in terms define who were to be benefited by the conveyance. In a grant at common law, there must be a person *in esse*, both to give and to receive a conveyance, in order to make a deed of an immediate estate by or to such person good ; and if the deed create any uncertainty as to who is the grantee intended, it will be void. 2 Washburn Real Prop. pp. 566, 567. So also is it necessary to the execution of a use, under the statute, that there should be a *cestui que use in esse*, and if a use be limited to a person not *in esse*, or to a person uncertain, the statute cannot execute the use. Cruise's Dig., title XI (use), ch. iii, § 22. Such being the rule, this deed could never be supported except upon the ground that it creates a charitable use, in which case it should seem that it would be no objection to it, that the persons to be benefited are uncertain or indefinitely described. *Bartlett* v. *King*, 12 Mass. 537 ; *Going* v. *Emery*, 16 Pick. 107 ; *Vidal* v. *Girard*, 2 How. U. S., 128 ; in which last named case is a full discussion of the subject, and a review of the authorities.

III. Can it be supposed that this grantor intended to create a charitable use, which, under the form of this deed, would imply a continuing trust, and not merely a conveyance of the land to some person or persons then or thereafter to come into being? From what has already been said, this is, at least, improbable. " In all ancient instruments and transactions where doubtful words are used, where the purpose and intent are obscurely expressed, the acts and conduct of the parties immediately following are to be regarded as the best expositors." Per Shaw, C. J., in *Cambridge* v. *Lexington*, 17 Pick. 222. See also *Choat* v. *Burnham*, 7 Pick, 274; *Livingstone* v. *Tenbroeck*, 16 Johns. R. 14. The deed in question is a singular document and full of obscurity, and so much so, that it might be treated as a nullity on the ground of uncertainty, in which case the complainant would convey to the defendant by force of the deed from the heirs of Moses Brown. But it may not be necessary to take this course in view of the facts set forth in the answer, which clearly shows

that the parties in possession have always acted as the owners of the land, and were deemed such both by the grantor, who lived some seventeen years after the making of the deed, and the " feoffees in trust." In either case the complainant would be competent to make a good title.

*Markland, for defendant :—*

The deed from Moses Brown, to say the least, *sounds* like a charitable use. It is a grant to certain persons called "*feoffees in trust*" for the benefit of others, namely, the colored people who then were or thereafter might be in the then town of Providence, and the deed makes it the duty of the "*feoffees in trust*" to *apply* the land in question for the use of said colored people, for a *school house and meeting house*, and to this extent the deed did in terms impose an active duty, eleemosynary in its nature, and which would, ordinarily, constitute a charitable use. *Vidal* v. *Girard's Executors*, 2 How. U. S. 127. There is difficulty, perhaps, in ascertaining from the deed itself when or how the application of the land was intended to be made, but still the duty to make it remains. The complainant's counsel says, that the deed may be treated as a nullity on the ground of uncertainty, and then the complainant can make a good title under the conveyance to it from the heirs of Moses Brown ; but if the original deed cannot be treated as void, then that it should be construed, as it has been done by the acts of the parties, as creating not a trust or use, but an absolute gift. He has considered the case very fully, and if his conclusions are satisfactory to the court, they will be to the respondent.

Durfee, J. This bill asks us to enforce the performance of a contract for an exchange of lands between the complainants and the defendant. The land which, on their part, the complainants have contracted to exchange, is the same land which is embraced in a deed executed by Moses Brown, the then owner of the land, in April, 1819. That deed purports to convey the land in question to Obadiah Brown, George Benson and Henry Jackson, and, after them, to the town council of the then town of Providence, in trust, for the purpose of erecting thereon " a suitable building for a school house on the Lancaster plan of

education, and also for a meeting house for divine worship" for the use, under certain regulations prescribed in the deed, of the colored people of Providence. The deed is inartificially drawn, but its purposes are clearly expressed, and are of such a kind that they can properly be carried into effect. It is, we think, a good conveyance to charitable uses; *Potter* v. *Thornton*, 7 R. I. 252; and, being unambiguous in its terms, no subsequent practice under it can materially modify its construction or destroy the trust which it directs. The grant is also not the less valid by reason of the fact that no fund was provided in the deed for the erection of the building contemplated in it. It may have been the purpose of the grantor to erect the building himself; or it may have been his purpose to leave it to the beneficiaries of the grant to procure, by their own efforts and the contributions of the benevolent, the means of erecting it; for, in whatever mode erected, it would, when erected, become subject to the trust of the land on which it was situate. Neither can it make any difference that the original grantees, or "feoffees in trust," as they are termed in the deed, have deceased, or that the town of Providence has become the city of Providence; for the uses to which the land was granted being such as to require a fee to support them, the grant of a fee will be implied; and, if that fee does not now vest in the city council of the city of Providence, as the successors of the town council of the town of Providence, nevertheless equity will not suffer the trust to fail for the want of a proper trustee. We think, therefore, that the complainants are not in a position to perform the contract, which they seek to enforce, on their own side; and so, of course, they have no claim to have it performed by the defendant. The bill must be dismissed, but, the suit being amicable, without costs.